IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SUSAN LOCKITSKI, )
)
        Plaintiff, )
)
v. ) Civil Action No. 12-132J
)
CAROLYN W. COLVIN, )
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
        Defendant. )

## MEMORANDUM JUDGMENT ORDER

AND NOW, this 29th day of July, 2013, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 8) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 6) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.

2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending application for Title II benefits[1] on May 19, 2008, alleging a disability onset date of August 10, 2007, due to major depression, valvular heart disease and atrial fibrillation. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on March 24, 2010, at which plaintiff, represented by counsel, appeared and testified. On August 12, 2010, the ALJ issued a decision finding that plaintiff is not disabled. On May 4, 2012, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 46 years old on her alleged onset date, which is classified as a younger person under the regulations (20 C.F.R. §404.1563(c)), and was 50 years old at the time of the ALJ's decision, which is classified as a person closely approaching advanced age (20 C.F.R. §404.1563(d)). She has at least a high school education and has past relevant work experience as an account executive, a salesperson and an administrative secretary, but she has not engaged in any substantial gainful activity since her alleged onset date.

---

[1] The ALJ found that plaintiff met the disability insured status requirements of the Act on her alleged onset date and has acquired sufficient coverage to remain insured through December 31, 2012.

AO 72
(Rev. 8/82)

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that plaintiff suffers from the severe impairments of atrial fibrillation, rheumatic heart disease, congestive heart failure, depression and anxiety, but also found that those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to engage in work at the sedentary exertional level except that: she is limited to simple, routine, repetitive tasks; she requires a low stress environment, *i.e.*, a work environment with few changes in work processes and no fast-paced or quota production standards; and, she is limited to occasional contact with the public, co-workers and supervisors. (R. 21). Taking into account these limiting effects, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including final assembler, ticket checker and ampoule sealer. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform her past relevant work, she is capable of performing jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

AO 72
(Rev. 8/82)

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[2] 20 C.F.R. §404.1520. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises three challenges to the ALJ's findings: (1) the ALJ erred at step 3 by concluding that plaintiff's mental impairments do not meet or equal a listed

---

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §404.1520; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §404.1520a.

impairment; (2) the ALJ improperly evaluated the medical evidence; and, (3) the ALJ improperly equated plaintiff's ability to perform activities of daily living with an ability to work. Upon review, the court is satisfied that all of the ALJ's findings are supported by substantial evidence.

Plaintiff first argues that the ALJ erred at step 3 in finding that plaintiff's severe mental impairment of depression does not meet or equal Listing 12.04 for affective disorders.[3] This court finds no error in the ALJ's step 3 analysis or conclusions.

At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §404.1520(d). "If the impairment is equivalent to a listed

---

[3] In his decision, the ALJ found that plaintiff suffers from the severe mental impairments of depression and anxiety, but concluded that those impairments do not meet or equal either Listing 12.04 for affective disorders or Listing 12.06 for anxiety related disorders. The court notes that the B criteria of 12.04 and 12.06 are identical, but the C criteria of those listings are different. Here, plaintiff does not challenge the ALJ's finding that she does not meet Listing 12.06, and there is no evidence in the record which would support a finding that plaintiff meets the C criteria of that listing, which requires "a complete inability to function independently outside the area of one's home." Accordingly, the court will address only the ALJ's finding that plaintiff does not meet Listing 12.04, recognizing that if plaintiff meets the B criteria of Listing 12.04, she also would meet the identical B criteria of Listing 12.06.

impairment then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The ALJ has the burden to identify the relevant listed impairment that compares with the claimant's impairment and must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id. at 120, n.2. However, the burden is on the claimant to present medical findings that show that her impairment matches or is equal in severity to a listed impairment. Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

Here, as required, the ALJ properly identified Listing 12.04 as the relevant listing that compares with plaintiff's depression and sufficiently explained why that impairment, alone or in combination with plaintiff's other impairments, does not meet or equal that listing. (R. 18-21); see Burnett, 220 F.3d at 120, n.2. In particular, the ALJ determined that plaintiff failed to meet either the "B" or "C" criteria of Listing 12.04.[4] Because Listing 12.04 provides that the "required level of severity for [affective] disorders is met [only] when both the A and B criteria

---

[4] The "B" criteria under 12.04 provide that the mental impairment must result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 12.04B (emphasis added). Here, the ALJ found that plaintiff has no limitation in activities of daily living; moderate limitations in social functioning and concentration, persistence or pace; and, no repeated episodes of decompensation of extended duration since the alleged disability onset date. (R. 18-20).

are satisfied, or when the C criteria are met," (emphasis added), the ALJ concluded that plaintiff does not meet the listing.

Plaintiff, however, contends that there is medical evidence in the record supporting a finding that she meets the B criteria of Listing 12.04.[5] Specifically, plaintiff points to: (1) a report from consultative examiner Dr. Dennis Clark indicating that she has "extreme" restrictions in her ability to perform a number of work-related mental activities (R. 428-434); and, (2) a mental residual functional capacity assessment completed by the physician's assistant to plaintiff's treating physician Dr. Luisito Dingong suggesting that plaintiff has an "extreme" impairment in her ability to perform routine tasks on a regular and reliable basis, and on a sustained basis over an 8-hour day, without frequent absences, as well as "marked" impairments in several other areas of work-related mental activities. (R. 664-670).

Plaintiff argues that these reports are sufficient to establish that she has "marked" limitations[6] in at least two of the functional areas enumerated in the B criteria to Listing

---

[5] Although plaintiff also suggests that she meets the C criteria of Listing 12.04, she can point to no evidence in the record to support such a conclusion. The ALJ adequately explained why plaintiff does not meet the C criteria, (R. 21), and that finding is supported by substantial evidence as outlined in the ALJ's decision.

[6] Where "marked" is used as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. 12.00C. "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, so long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively and on a sustained basis." Id.

12.04, but that the ALJ improperly rejected them. Upon review, the court is satisfied that the ALJ properly evaluated the foregoing medical reports and adequately explained why he chose to give them little weight.

Initially, to the extent plaintiff argues that the reports in question support a finding that she is disabled at step 3 of the sequential evaluation process, that argument is without merit. Neither Dr. Clark nor Dr. Dingong opined in either of the reports at issue that plaintiff's mental impairments are sufficient to meet or equal Listing 12.04, nor any of the other listed impairments and, in fact, neither was asked to render such an opinion. Instead, the questionnaires submitted to Dr. Clark and Dr. Dingong requested their opinions on plaintiff's ability to perform more specific work-related mental activities for purposes of assessing plaintiff's mental residual functional capacity.

As the ALJ properly recognized in his decision, the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3." (R. 21)(emphasis added). Instead, a mental residual functional capacity assessment is used at steps 4 and 5 and "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B ...." (Id.) Thus, "[a]n assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that

may be affected by mental disorders <u>when your impairment is severe but neither meets nor is equivalent in severity to a listed mental disorder</u>." 20 C.F.R., Part 404, Subpart P, Appendix 1, 12.00A. (emphasis added).

Here, the reports upon which plaintiff relies are residual functional capacity assessments and address plaintiff's ability to perform more specific work-related mental activities rather than the broad categories found in the B criteria of Listing 12.04, and there is no medical evidence in the record from any treating or non-treating source suggesting that plaintiff has marked or extreme limitations in any of the broad categories necessary to meet those criteria. Accordingly, even if accepted, the residual functional capacity assessments of Dr. Clark and Dr. Dingong would not support a finding of disabled at step 3 of the sequential evaluation process.

To the extent plaintiff contends that the ALJ improperly rejected the residual functional capacity assessments at issue, or otherwise improperly evaluated the medical evidence, the court can discern no errors in the ALJ's analysis and is satisfied that his conclusions are supported by substantial evidence.

Under the Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §404.1527(d)(2); SSR 96-2p; <u>Fargnoli</u>, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques

AO 72
(Rev. 8/82)

and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. When a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §404.1527(d).

The ALJ adhered to the foregoing standards in evaluating the medical evidence in this case. The ALJ expressly addressed the reports from both Dr. Clark and Dr. Dingong in his decision and adequately explained why he gave those opinions "little weight." (R. 25-27). The ALJ noted that Dr. Clark's opinion was based on one examination and "does not reflect a longitudinal understanding of [plaintiff's] condition" and that it was based "largely on [plaintiff's] subjective complaints." (R. 27) As for the opinions of Dr. Dingong and his physician's assistant, the ALJ found that their opinions are not consistent with the totality of the medical evidence, including Dr. Dingong's own treatment notes. (Id.)

The medical evidence of record, as outlined in detail in the decision, supports the ALJ's evaluation of the residual functional capacity assessments from Dr. Clark and Dr. Dingong and his assistant, (R. 25 and 26), and, in light of the totality of the evidence, the court is satisfied that the ALJ's decision to give "little weight" to the debilitating limitations set forth in those assessments is supported by substantial evidence.

Plaintiff also contends that the ALJ improperly gave minimal weight to several Global Assessment of Functioning ("GAF") scores below 50[7] set forth in the record and placed improper emphasis on plaintiff's better GAF scores found in the record. The court finds no error in the ALJ's analysis this evidence.

The GAF score considers psychological, social and occupational functioning on a hypothetical continuum of mental health. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994). Although the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have any direct correlation to the disability requirements and standards of the Act, See 65 Fed.Reg. 50746, 50764-65 (2000), as with any other clinical findings contained in narrative reports of medical sources, the ALJ nevertheless is to consider and weigh those findings under the standards set forth in the regulations for evaluating medical opinion evidence. 20 C.F.R. §404.1527(d).

The court is satisfied that the ALJ properly considered and weighed plaintiff's GAF scores in this case. While the ALJ acknowledged the GAF score of 50 as recorded by Dr. Dingong in April of 2008, as well as the two other scores in the 38-50 range, (R. 25), he determined that those scores were inconsistent with multiple GAF scores assessed by Dr. Dingong on 10 subsequent

---

[7] GAF scores in this range are indicative of serious symptoms and/or serious difficulty in social, occupational or school functioning See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994).

occasions between June of 2008 and July of 2009, all of which were in the range of 65-70, indicative of mild to moderate symptoms and/or mild to moderate difficulty in social, occupational or school functioning. (R. 26). The ALJ considered these subsequent scores to be more consistent with the objective evidence of record and his decision to emphasize the more consistent scores was not erroneous.

The court also finds no error in the ALJ's evaluation of the opinion of Dr. Bryan, the state agency consultant. Pursuant to the Regulations, state agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §404.1527(f)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §404.1527(f)(2)(ii); SSR 96-6p. The ALJ did so here and, having concluded that the state agency physician's report was more consistent with the totality of the evidence, he properly gave that opinion "some weight." (R. 27).

In sum, the ALJ did a thorough job in his decision in setting forth the relevant medical evidence and explaining why he rejected or discounted any evidence. The court has reviewed the ALJ's decision and the record as a whole and is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

AO 72
(Rev. 8/82)

Finally, the court finds no merit to plaintiff's argument that the ALJ placed undue emphasis on plaintiff's ability to engage in activities of daily living in assessing plaintiff's subjective complaints. As required under the regulations, the ALJ properly considered plaintiff's subjective complaints in light of the medical evidence and all of the other evidence of record, including plaintiff's daily activities. 20 C.F.R. §404.1529(c); see also SSR 96-7p.

The ALJ did a thorough job in his decision explaining why plaintiff's statements concerning the "intensity, persistence and limiting effects of her symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 23-25). In particular, he noted that both plaintiff's self-reported activities of daily living and the clinical and objective findings in the record are inconsistent with an individual experiencing totally debilitating symptomatology. (R. 24).

Moreover, while it is true, as plaintiff now asserts, that sporadic and transitory activities of daily living cannot be used to show an ability to engage in substantial gainful activity, see Fargnoli, 247 F.3d at 40, n.5, the ALJ did not do so here. Instead,, the ALJ properly considered plaintiff's allegations in light of not only her activities of daily living but also in light of the medical evidence, which revealed the absence of clinical and objective findings supporting plaintiff's allegations of totally debilitating symptoms.

It also is important to note that while the ALJ did not find plaintiff's subjective complaints <u>entirely</u> credible, his decision makes clear that, to the extent plaintiff's allegations as to the limitations arising from her impairments are supported by the medical and other evidence, the ALJ did accommodate those limitations in his residual functional capacity finding. Only to the extent that plaintiff's allegations are not so supported did the ALJ find them to be not credible.

It is clear from his decision that the ALJ adhered to the appropriate standards in evaluating plaintiff's subjective complaints and it is not this court's function to re-weigh the evidence and arrive at its own credibility finding. Rather, this court must only determine whether the ALJ's credibility determination is supported by substantial evidence and the court is satisfied that it is.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

                                */s/ Gustave Diamond*
                                Gustave Diamond
                                United States District Judge

cc: James R. Burn, Jr., Esq.
    Abes-Baumann, P.C.
    810 Penn Avenue
    Fifth Floor
    Pittsburgh, PA 15222

    Stephanie Haines
    Assistant U.S. Attorney
    Room 224, Penn Traffic Building
    319 Washington Street
    Johnstown, PA 15901